**SO ORDERED.**

**SIGNED this 17 day of August, 2012.**

J. Rich Leonard
United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

**TIMOTHY M. MOORE,** **CASE NO. 11-03465-8-JRL**

**DEBTOR.** **CHAPTER 7**

---

**DAVID M. WARREN, Trustee,**

**PLAINTIFF,**

**v.**

**TIMOTHY M. MOORE,**

**DEFENDANT.**

**ADVERSARY PROCEEDING NO. 11-00294-8-JRL**

## ORDER

The trustee ("plaintiff") filed this adversary proceeding against Timothy Moore ("defendant") pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A) to object to the defendant's discharge. A trial was held on July 24, 2012 and August 1, 2012 in Raleigh, North Carolina.

## JURISDICTION

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the

United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine. This order constitutes the findings of fact and conclusions of law required by B.R. 7052.

## FACTS

During the July 24, 2012 hearing, it came to the court's attention that the defendant may not have had an opportunity to review the electronic version of his petition and schedules filed with the court. The defendant's counsel presented a document labeled "exhibit 8 front page of debtor's signed petition." However, the document was actually a copy of Official Form 21, statement of the debtor's social-security number, not the front page of the debtor's signed petition. Throughout the hearing, the defendant testified to the effect that he did not remember signing off on information contained in the electronically filed petition. The court entered an order dated July 31, 2012, requiring counsel to produce the defendant's original documents pursuant to Local Rule 5005-4(7)(a).[1]

---

[1] The rule states:

> A Filing User must obtain original signatures prior to filing on all electronically filed documents that require original signatures from any person other than the Filing User (e.g., petitions, lists, schedules, statements, amendments, affidavits, verifications, and other documents that require verification under Fed. R. Bankr. P. 1008 or an unsworn declaration as provided in 28 U.S.C. § 1746), which documents must be maintained by the Filing User in paper form, bearing the original signatures, for four years after the closing of the case or proceeding in which the documents were filed. Upon the court's request, the Filing User must provide the original signed documents for review.

E.D.N.C. LBR 5005-4(7)(a).

At the August 1, 2012 hearing, the defendant's counsel presented the original petition with the defendant's "wet-ink" signature dated April 28, 2011. Upon review of the document provided, the court finds that this document is not an exact replica of the petition electronically filed with the court. There are entire sections marked out and words and numbers handwritten over top of the typed text.

The defendant testified that he met with bankruptcy counsel on April 28, 2011 to discuss the petition and schedules. The defendant also stated that he remembered signing the petition on that day while bankruptcy counsel was marking things out on the petition. That was the last time he saw his petition before it was electronically filed with the court. The defendant testified that bankruptcy counsel never told him that he would be given an opportunity to review the final copy. It is not at all clear to the court what the debtor declared, under penalty of perjury, was true and correct. In his defense, bankruptcy counsel made the statement that clients typically do not like to come back to the office to review the final draft of the petition.

Given the ambiguity as to what the defendant signed on April 28, 2011, the court relies on the defendant's statement, made under oath at his § 341 meeting and again during a rule 2004 examination with the plaintiff, that the information contained in his petition and schedules were true and accurate. At the hearing, the defendant testified that he thought he understood the severity of the oath he took at the § 341 meeting and rule 2004 examination, but looking back he is not so sure. The transcript from the defendant's rule 2004 examination with the plaintiff states:

Q: (By the plaintiff) So you filed this bankruptcy petition on May 4th of this year?

A. (By the defendant) That is correct.

. . .

> Q. (By the plaintiff) And let me hand you what's been marked as Exhibit 1 for identification. Let me have you identify that as being the petition, schedules and statement of financial affairs and the statement of intentions filed with the Court. I'll give you a moment to review that, and if you could acknowledge those for me.
>
> A. (By the defendant) Yeah, it's in a different format than I've seen before, but I guess this is right. I have no reason to think it's not.
>
> Q. (By the plaintiff) Okay. Also, you reviewed those documents with your lawyer, I think that was your testimony at the 341 meeting as well, which you reviewed those documents under oath and testified that those are accurate that you filed with the Court.
>
> A. (By the defendant) That's correct.
>
> . . .
>
> Q. (By the plaintiff) Okay. Mr. Moore, you realize this is the second time I've asked you the question that you executed those documents under penalty of perjury, under oath.
>
> A. (By the defendant) Uh-huh. Yes, sir.
>
> Q. (By the plaintiff) So they need to be accurate. And you're telling me it's accurate now or pretty close to it?
>
> A. (By the defendant) Yes.

The defendant's counsel proffered that the final version of the petition was not electronically filed with the court until May 4, 2011. Pursuant to an order entered July 1, 2011, the plaintiff conducted a rule 2004 examination of the defendant on July 19, 2011. Around the time of the rule 2004 examination, the defendant provided the plaintiff with additional documents per the plaintiff's request. Based on a review of the documents provided by the defendant and the testimony given by the defendant at the rule 2004 examination, the plaintiff found numerous misstatements and omissions not reflected in the defendant's statement of financial affairs ("SOFA") and schedules.

The plaintiff discovered that prior to filing, the defendant maintained a joint checking account with his non-filing spouse, Linda Moore, at Bank of America. During March 2011, $25,500.00 was transferred from the joint account to Mrs. Moore's individual checking account with Wachovia Bank. This transfer was not disclosed on the defendant's SOFA. At the hearing, the defendant testified that he would withdraw money from this account for food and other living expenses. While the majority of funds may have come from his wife, the defendant's paychecks and pension benefits were also deposited into this account.

The defendant misstated his year-to-date income on his SOFA by one pay statement. He stated that his year-to-date income for 2011 was $12,750.00, as of May 4, 2011, the petition date. However, the debtor's pay advice for the period ending on April 30, 2011, stated that his year-to-date gross wages were $16,653.73. The defendant indicated this was not a misstatement because he signed the petition on April 28, 2011. The defendant also misstated his monthly gross wages to be $1,875.00. Based on pay advices, his monthly gross wages were actually $4,163.44.

The defendant misstated his non-filing spouse's monthly gross wages to be $5,316.91. Based on her pay advices, her average monthly gross wages, together with bonuses, equaled roughly $19,440.30. Her W-2 for the year 2010 reflects that her gross income was $192,951.63 or $16,079.25 a month.

In addition, the defendant failed to disclose the following: income he earned from the operation of his business in 2008, 2009, and 2010;[2] the refinance of a deed of trust with Gateway

---

[2] Question 1 on the debtor's SOFA states that the gross amount of income earned from the operation of his business was $0.00 for 2008, 2009, and 2010. Based on his federal income tax returns, his gross receipts from the business in 2008, 2009, and 2010 were $61,890.00, $31,083.00, and $22,709.00, respectively.

Bank Mortgage, Inc. within five months of the petition date; the transfer of a 401K account; the closing of two savings accounts with Bank of America;[3] ownership of a term life insurance policy; a gift to the University of Virginia student aid; a debt to his father-in-law; and equipment and intellectual property obtained from his limited liability company.  The defendant also put the wrong date of his last entry into his safety deposit box held at Bank of America, and misstated the amount he paid to Blue Cross Credit Union.

On August 1, 2011, the court entered an order extending the time to file objections to the debtor's discharge to August 31, 2011.  Therefore, the plaintiff's complaint filed on August 31, 2011 was timely.

## **DISCUSSION**

The plaintiff contends the defendant's bankruptcy discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A).  Pursuant to § 727 of the Bankruptcy Code,

> (a) The court shall grant the debtor a discharge, unless–
> . . .
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
> > > (A) property of the debtor, within one year before the date of the filing of the petition;
> > . . .
> > (4) the debtor knowingly and fraudulently, in or in connection with the case–
> > > (A) made a false oath or account;

11 U.S.C. § 727(a)(2)(A) & (a)(4)(A).  For the reasons that follow, the court finds that the defendant's discharge will be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

---

[3] The funds in these accounts totaled over $17,000.00 and were transferred to a Bank of America checking account with a balance of two dollars, as of the petition date.

6

The party objecting to discharge under 11 U.S.C. § 727(a)(4)(A) has the burden of proving by a preponderance of the evidence: "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." Butler v. Schoonmaker (In re Schoonmaker), Adv. Pro. No. 04-00079-8-AP at *3 (Bankr. E.D.N.C. May 25, 2006) (quoting Sholdra v. Chilmark Fin., LLP (In re Sholdra), 249 F.3d 380, 382 (5th Cir. 2001)); Farouki v. Emirates Bank Intern., Ltd., 14 F.3d 244, 249 (4th Cir. 1994) (stating that a party objecting to discharge must meet his burden by a preponderance of the evidence). The court finds that prongs (1)–(3) and (5) are satisfied based on the defendant's testimony that he failed to disclose assets in his petition and schedules that might have become property of the estate. Thus, the issue becomes whether the defendant omitted this information with an intent to deceive.

"The requirement that a false statement be knowingly and fraudulently made is satisfied for purposes of 11 U.S.C. § 727(a)(4) if the 'debtor knows the truth and nonetheless willfully and intentionally swears to what is false.'" Butler v. Ingle (In re Ingle), 70 B.R. 979, 984 (Bankr. E.D.N.C. 1987) (quoting In re Cline, 48 B.R. 581, 584 (Bankr. E.D. Tenn. 1985)). Rarely will a defendant admit that he made a false statement with the intent to deceive. Thus "the court may infer from circumstantial evidence, including a pattern of concealment and non-disclosure, that the debtor acted with the necessary intent." Ingle, 70 B.R. at 983. "Fraudulent intent may also be proven by circumstantial evidence of reckless indifference to the accuracy of the bankruptcy schedules and the statement of financial affairs." Groupe v. Braun (In re Braun), 98 B.R. 382, 385 (Bankr. N.D. Ill. 1989). "While an inadvertent mistake is not cause for the denial of a

discharge, a pattern of omissions and inaccuracies on a debtor's sworn schedules indicates a reckless disregard for the truth." Angell v. Williams (In re Williams), Adv. Pro. No. 08-00188-8-JRL, 2010 WL 364459 at *9 (Bankr. E.D.N.C. Jan. 27, 2010).

The plaintiff contends that First Federal Savings and Loan Association of Raleigh v. Johnson (In re Johnson), 82 B.R. 801 (Bankr. E.D.N.C. 1988), provides clear guidance on the issue of intent. In that case, the defendants made several material misstatements and omissions in their SOFA. Specifically, they understated their income, failed to disclose a prior bankruptcy filing, failed to disclose a transfer of property, and undervalued their assets and overstated the amount of their secured debt. The court found "the large number of false oaths made by the debtors in this case [was] significant." Id. at 806. The court held that the debtors' misstatements and omissions amounted to a false oath under § 727(a)(4).

The defendant contends that his failure to disclose information was inadvertent. He also testified that he did not review the final draft of his petition and schedules. The Johnson court noted, "[a] subsequent amendment of schedules to show the correct amount of secured claims does not expunge the falsity of the original schedules." Id. at 805. Also, the court was unpersuaded by the female debtor's defense of failing to read the petition. The court stated, "it is no defense to an objection to discharge that one relied on the advice of counsel when the questions which were falsely answered did not require professional assistance in order to be answered truthfully." Id. at 806; see also In re Tully, 818 F.2d 106, 111 (1st Cir.1987) ("[A] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.").

The defendant argues this case is more similar to In re Batton, Adv. Pro. No. 06-00004-8-

8

AP (Bankr. E.D.N.C. Dec. 18, 2006). In that case, the court granted summary judgment in favor of the debtor under § 727(a)(4) because no evidence had been presented to establish the debtor's requisite intent to deceive. That debtor failed to disclose a transfer of life insurance proceeds for an elderly parent. The debtor's elderly mother and sole beneficiary to a life insurance policy, instructed the debtor to handle the proceeds on her behalf. The court found that the debtor should have listed the transaction on his petition. The court also found that the debtor provided an adequate explanation for why he possessed the proceeds and also for why he returned them to his mother in the form of a certificate of deposit after paying expenses under his mother's authority. The debtor never believed the proceeds were his own, and did not use the proceeds for unauthorized means. This is not the case here.

Unlike Batton, the debtor was unable to provide an adequate explanation for his non-disclosures. Batton is also distinguishable because that case involved a single non-disclosure. Here, the defendant has demonstrated a pattern of omissions which indicates the defendant's reckless disregard for the truth. Viewed in isolation, many of the defendant's misstatements and omissions would not amount to a reckless indifference to the truth. However, the court finds that taken as a whole the innumerable amount of omissions and errors that went uncorrected for several months amount to a false oath.

Most critically, the defendant failed to disclose a substantial transfer from a joint checking account he held with his non-filing spouse and used on a regular basis to conduct his affairs and deposit his pay checks. The defendant's counsel argues that based Jimenez v. Brown, 131 N.C. App. 818, 825, 509 S.E.2d 241, 246 (1998), the defendant was not required to disclose this account since it would not constitute property of the estate. Essentially, the defendant's

9

counsel engaged in an ex parte legal analysis and did not give any other interested party an opportunity to object. Regardless of whether the trustee could have sought those funds for the estate, it is clear that the transfer of over $25,000.00 to the non-filing spouse should have been disclosed on his petition since the trustee is entitled to an opportunity to scrutinize that type of transaction.

The defendant's conduct forced the plaintiff to conduct an extensive investigation to obtain all the relevant information about the defendant's financial picture. This method is inefficient and unfair to other parties seeking access to this court system. Schedules need to be accurate when filed, and it is no defense that a debtor recognizes in hindsight that more information should have been disclosed. The court finds that the defendant had the requisite intent to deceive and the information omitted was material to the bankruptcy case.

Based on the foregoing, the defendant's discharge is **DENIED**. Because the court finds that the plaintiff has met his burden under § 727(a)(4)(A) it is unnecessary for the court to consider the plaintiff's argument under § 727(a)(2)(A).

**END OF DOCUMENT**